Eugene S. Owen as Administrator *vs.* E. C. Cook, *et al.*

Opinion filed December 1, 1899.

**Negligence—Question for Jury—Exception.**

> Ordinarily, in an action to recover damages for negligence, the question whether the acts complained of constitute negligence is for the jury. This is not the case, however, when it is apparent that fair-minded men would not infer negligence from the facts proved.

**Fires—Proximate Cause of Loss.**

> A person whose property is threatened with imminent destruction by fire may take such steps for its protection as are reasonable and proper, if his acts aid or contribute to the destruction of another's property, he will not be liable as for its negligent destruction. The fire from which, without negligence, he seeks to protect himself, will be considered as the direct and proximate cause of the loss, and also the cause of his acts.

**Back Fire—Destruction of Property Thereby—Proximate Cause.**

> The defendants, when on a hunting expedition, encamped in a vacant house which was situated in an open prairie. A prairie fire originated near the house, and threatened its destruction and the destruction of defendants' property. A back fire was set by them near the house, and allowed to run until it joined the main fire, which destroyed the property of plaintiff's intestate. *Held*, under the facts stated in the opinion, that the original fire was the proximate cause of the loss, and that the acts of the defendants in back-firing were not negligent, and are wholly insufficient to sustain a verdict for the plaintiff for the negligent destruction of the property.

Appeal from District Court, Kidder County; *Winchester*, J.

Action by Eugene S. Owen, as administrator of the estate of Eleazer Shoemaker, against E. C. Cook and others. Judgment for plaintiff. Defendants appeal.

Reversed.

*John E. Greene*, for appellants.

*Newton & Smith* and *Alexander Hughes*, for respondent.

Young, J. The plaintiff prosecutes this action as the administrator of Eleazer Shoemaker, deceased, to recover damages suffered by the latter during his lifetime in the destruction of certain buildings and other property in a prairie fire which occurred on October

6, 1897, in Kidder county, about 11 miles from Dawson. The complaint charges the defendants with negligently starting the fire which caused the destruction of the property in question, and also with negligence in permitting it to escape from the place where it was started. The answer denies that the defendants started, or caused to be started, the fire described in the complaint, and denies that plaintiff's intestate sustained any damage by reason of any act or omission on the part of the defendants. The case was tried in the District Court to a jury, and a verdict was returned against the defendants .in the sum of $900. A motion for a new trial was made in the District Court, based upon the alleged insufficiency of the evidence to sustain the verdict. No question was raised as to the pleadings, and no errors were specified on the admission of evidence. It was conceded in the motion that the property of plaintiff's intestate was destroyed by prairie fire at the time and place alleged in the complaint, and that the property so destroyed was of the value of $900, as found by the jury. Defendants' entire contention was and is that the evidence is insufficient to charge them with responsibility for the fire which occasioned the loss in question. The motion for a new trial was denied, and judgment was entered against the defendants upon the verdict. This appeal is from the judgment and the order overruling the motion for a new trial, and presents for review the same questions that were before the trial court in the motion for new trial.

The record shows that the five defendants were residents of the State of Illinois, and that they came as a party to Kidder county for the purpose of hunting, and that they arrived in Dawson, in said county, on October 6, 1897, and there secured the services of one Chris Wisner and his brother, with their teams, to convey them and their hunting and camping outfit to their hunting grounds. It appears that they went immediately to a small lake, called "Kilby Lake," about 14 miles distant from Dawson. Wisner had secured permission for the party to occupy a vacant house which was located at the south end and on the east shore of the lake, and about 20 rods from the southeast shore. The party arrived at the house at 11 o'clock in the forenoon, or a few minutes later, and at once proceeded to unpack their outfit and settle themselves in the house which was to be used as their camp and headquarters. Kilby Lake is a small body of water, perhaps 50 rods wide and one-half mile long, extending almost due north and south. All of the country surrounding the lake for varying distances was then unbroken prairie, covered with dead and dry grass. The buildings and property of plaintiff's intestate, which were destroyed by fire on that day, were situated two and three-fourths miles almost due south of the south end of Kilby Lake, where the defendants were camped. From Kilby Lake to where the property in question was burned, and beyond, it was open prairie. There was a stiff wind on that day, coming from the north, a little west of north; traveling, as estimated by one of the witnesses, for plaintiff, at 20 miles an hour.

During the time when defendants were settling their belongings in the Kilby house, and about 11:30 a. m., a smoke was seen to arise on the prairie about a quarter of a mile northeast of the house, in a depression between two small hills or knolls which concealed the fire itself from view for a time. All of the eyewitnesses agree that the fire originated at this point. Within a few minutes the fire was seen advancing over the knoll to the south, from whence it swept southward with increasing swiftness. The line of fire went between thirty and forty rods east of the house where defendants were camped. E. C. Nafus, a witness for plaintiff, came towards the fire from the east as soon as he saw the first smoke. He testified that the front, or head fire, was about twenty rods wide when it was one-half mile south from its place of starting, and that he went south from that point in front of the advancing flames a mile and a quarter for the purpose of back-firing to protect his property, and that he had fired but about three rods when the head fire reached him. This was at 12:30 p. m., as near as he could fix the time. At this point the head fire, which was here but a few rods wide, was stooped by a fire break and a weed patch. This witness followed the east side fire, and back-fired in that direction outside of his fire break, and in advance of the flames spreading eastward towards his premises. But little attention was paid by this witness to the side fire on the west, but he testified that the fire passed west of his fire break, and went south about a mile and a half. This carried the line of fire one-half mile south of the property which was destroyed, and one-half mile east of it. This witness says: "At three o'clock I was about three-fourths of a mile 'from Shoemaker's buildings. I could see his house. There was fire west of that, but I could not see how far. It was burned as far west as I could see." The fire on the west side burned westward all along the line from Kilby Lake to its terminus in the south, a distance of more than three miles. John W. Goodman, another of plaintiff's witnesses, and one who was nearest the west side of the fire, testified that it was "side-firing and back-firing all the way along,—all the way along the full length of the first head fire." Another witness, E. C. Stinchcomb, was a mile west of the fire line. He testified to the stopping of the head fire at 12:30 p. m. at the point indicated by the witness Nafus, and says: "The side fire was still burning as far as I could see at that time in a westerly direction. The head fire was entirely stopped at that point. All the fire left was the side fire burning west." The defendants and one of the Wisner brothers were at the Kilby house, engaged in protecting themselves, their property, and the house from the fire which was advancing towards them from the north and from the east. What they did will be considered later. We have stated sufficient facts to give an intelligent understanding of the questions presented on the motion for a new trial, and before us upon this appeal.

At the close of the case the defendants moved the court to instruct

the jury to return a verdict in their favor on the grounds ("1) that the undisputed evidence in this case shows that the main fire which originated on October 6, 1897, in a northerly direction from what has been known in this case as the 'Kilby House,' where the defendants were encamped, was not, and could not have been, set by the defendants, or either of them; (2) that the undisputed evidence in the case shows that no fire set by the defendants, or under their direction, or with their knowledge or consent, for the purpose of protecting their own property or otherwise, was allowed to spread beyond their control, or through their neglect to pass from under their control, or that any such fire in any way contributed to, or resulted in, the destruction or injury to the plaintiff's property, or any portion thereof." This motion was denied, and an exception taken to the ruling. Thereupon the defendants presented a separate request for a direction that they could not be held liable for the origin of the main fire. This was refused at the time, and an exception taken, and the case was argued to the jury upon both issues. At the close of the argument, however, with the consent of plaintiff's counsel, the court instructed the jury that the defendants could not be held responsible for the starting of the main fire northeast of the Kilby house. Counsel for appellants insist that the error in not granting his motion relative to defendants' responsibility for the main fire, at the time it was made, was not, and could not be, cured by granting it after the case had been argued to the jury upon that as one of the main issues, under the exceptional circumstances of this case. This presents an interesting question of practice, which we need not decide or discuss, inasmuch as we have reached the conclusion, after a careful study of the evidence, that the verdict returned cannot be sustained. By consent of counsel, all responsibility of the defendants for the origin of the main fire was eliminated, and is the law of this case. It is apparent, then, that, if the verdict can be sustained at all, there must be some evidence in the record tending to show that the defendants negligently started a new and independent fire, and that such fire either caused, or directly contributed, in a degree worthy of the law's notice, to the destruction of the property in question. Counsel for plaintiff contend that such is the case, and that the defendants were negligent in starting a certain back fire at the Kilby house, and allowing it to escape to the south. In this connection the evidence shows that the defendants, who were without previous experience in fighting prairie fires, placed themselves under the direction of their teamster, Wisner, for the purpose of protecting their camp from the approaching flames. An old fire break, partially surrounding the house, was freshened up with shovels. Back fires were set on the north, where the danger was greatest; also, on the west side of the house. These fires were entirely extinguished by means of water and wet sacks. The fire was also whipped out as it approached on the east side. On the south side a back fire was carried along to the west in advance of the main side fire. This was extinguished on

the side toward the house, but on the south side was permitted to run its course with the wind. It is contended that the acts of defendants in starting this fire on the south and permitting it to run were negligent, or at least that it was a question for the jury to say whether they were or not. An examination of the undisputed evidence upon this point leads us to a different conclusion. It is shown that at the time the back fire was set on the south side of the house the original fire had gone two or three miles to the south, and was burning westward all along the line. Under such conditions the defendants had a right to believe that this back fire, which they carried a few rods to the west in advance of the main fire, would join and burn out in the main fire, and that is just what did occur, as the evidence shows that the back fires united with the main fire within 50 rods of the house. All of the facts relative to the defendants' acts in starting the back fire are undisputed, and we are of the opinion that fair-minded men could not draw an inference from them that the defendants were negligent and imprudent in starting them in the manner and under the circumstances narrated. The question of negligence was not, then, for the jury. Tomp. Trials, § 1667. It is not negligence to start a back fire to protect one's property, providing the care and diligence of an honest and prudent man are exercised in guarding it. *Jesperson* v. *Phillips* (Minn.) 48 N. W. Rep. 770. In *McKenna* v. *Baessler* (Iowa,) 53 N. W. Rep. 103, 17 L. R. A. 310, it was held that one whose property had been destroyed by a back fire set by himself might recover from the person negligently setting out the fire from which he sought to protect himself, when it appeared that it would have been destroyed had the back fire not been set at all. The court said: "In determining this case, it is a most important fact to be kept in mind that the plaintiff's property would surely have been destroyed by the fire set out by the defendants, if plaintiff had remained idle. He would have been a mere spectator looking on at the destruction of his own property. It was not only his lawful right, but his duty, to use all reasonable and proper means to arrest the disaster. Every person is bound to use diligence to save himself from the negligent act of another.   *   *   *   When the plaintiff kindled the back fire, and thereby sought to save his buildings, he was in the strict line of duty, not only in attempting to save his property, but to save the defendants from an absolute liability for damages. It was his duty to fight the fire with fire or water, or in any way, so that his efforts in that direction were reasonable and proper." In the case at bar it must be conceded that the property of plaintiff's intestate would have been destroyed by the main fire, had no back fire been set by the defendants; and it also seems clear that the acts of defendants in protecting their property were reasonable and proper, within the meaning of the Iowa case from which we have quoted. So, also, we must conclude that the original fire, for which defendants are not responsible, was the direct, efficient, and proximate cause of the damage suffered by plaintiff's intestate.

The original fire was not only the responsible cause of the loss of the property involved, but it was the operative cause resulting in the back fires set by the defendants to protect their property and that under their charge, as well as various other back fires which were set out by other parties at other points on the same day to protect themselves against this same fire. In *Insurance Co. v. Boon,* 95 U. S. 117, 24 L. Ed. 395, the court said: "The question is not what cause was nearest in time or place to the catastrophe. That is not the meaning of the maxim, '*Causa proxima, non remota, spectatur.*' The proximate cause is the efficient cause,—the one that necessarily sets the other causes in operation. The causes that are merely incidental, or instruments of a superior or controlling agency, are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster. * * * The proximate cause, as we have seen, is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in place and time to the loss." We think the case at bar comes within the principle of *Scott* v. *Shepherd,* 2 W. Bl. 892, 3 Wils. 403, which has been universally approved by both courts and text writers whenever referred to. We quote from Bish. Noncont. Law, § 45: "The defendant threw a squib into an open market house, where there were many people. It fell upon the standing of Yates, and another there, instantly to prevent injury to himself and Yates, threw it across the market house, and it fell upon the standing of Ryal, who instantly, for the same reason as before, sent it to another part of the market house, and it there took effect upon the plaintiff. The intermediate throwings, it is perceived, were from an impulse natural and to be expected, so that the disastrous result, though 'remote,' was deemed a product of the original cause. That the thrower of the squib was properly held liable to the person finally injured was never doubted, and the doctrine of this case is accepted as law in all our states." To what extent the back fire set by defendants accelerated the spread of the main fire to the property destroyed, if at all, is wholly conjectural, and, furthermore, is not an element tending to establish any liability, in view of our conclusion that the acts of the defendants in back-firing to protect their property in the manner already described were reasonable and proper precautions under the conditions which confronted them. Ordinarily, in an action to recover damages for negligence, the question of whether the acts complained of were negligent is for the jury. This is not true, however, where the evidence is undisputed, and it is apparent that fair-minded men would not infer negligence from the facts proved. The judgment of the District Court is reversed, and a new trial granted. All concur.