**LOWDEN et al. v. SHOFFNER MER-CANTILE CO.**

No. 11570.

Circuit Court of Appeals, Eighth Circuit.

Feb. 26, 1940.

A. S. Buzbee, of Little Rock, Ark. (Thomas S. Buzbee, H. T. Harrison, and Edward L. Wright, all of Little Rock, Ark., on the brief), for appellants.

Shields M. Goodwin, of Little Rock, Ark. (S. M. Casey, of Batesville, Ark., and Verne McMillen, of Little Rock, Ark., on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

This is an appeal from a judgment recovered by the plaintiff, Shoffner Mercantile Company, against the defendants in the sum of $6,250, together with attorneys' fees and costs in the amount of $625, as damages on account of the destruction of its warehouse and contents by fire. The warehouse was located in the town of Shoffner, Arkansas, a hamlet situated adjacent to a side track of defendants' railway. The fire occurred on December 2, 1938. This action was brought to recover the reasonable value of the property so destroyed, and was tried by the court without a jury. The court found that a fire was set by the agents or employees of defendants on the right of way of the railway near the town of Shoffner and near the warehouse belonging to the plaintiff; that the fire was communicated to and destroyed the warehouse and stock; that the acts of defendants' agents in setting the fire constituted negligence; and that plaintiff was not guilty of contributory negligence in connection with said fire. There is no dispute over the reasonableness of the damages allowed by the court.

The State of Arkansas has a statute, Section 11147, Pope's Digest, which provides in part: "All corporations, companies or persons, engaged in operating any railroad wholly or partly in this State shall be liable for the destruction of, or injury to, any property, real or personal, which may be caused by fire, or result from any locomotive, engine, machinery, train, car, or other things used upon said railroad, or in the operation thereof, or which may result from, or be caused by, any employee, agent or servant of such corporation, company or person upon or in the operation of such railroad * * *."

The statute further provides that it is not necessary for the owner of the property so damaged to prove any negligence, but merely to prove that the fire was caused or resulted from the acts of employees, agents or servants of such company in the operation of such railroad. Attorneys' fees are allowable under the statute.

It appears that, in the month of December, 1938, the country in this vicinity was extremely dry; in fact, it was one of the driest seasons that had been experienced for many years. A group of railroad employees on a motor car had been engaged in burning around the right of way of the railroad some miles south of Shoffner. About three-thirty P. M. on the day in question, the crew was returning north through Shoffner, and several witnesses, no one of whom was connected with the plaintiff, contend that they saw the section crew set fire to the right of way at various places by throwing matches from the motor car into the grass and weeds which had been permitted to grow up all around the right of way, and in some places, between the rails. This is denied by the employees in question, but it was clearly a question of fact for the court to decide and there is ample evidence to sustain the finding that the railroad employees not only commenced fires at various places along the right of way north and south of Shoffner on the day in question, but left the fires burning without care or attention.

Shoffner is a small village without any fire-fighting apparatus, and when the fires gained headway, it became apparent that something had to be done if the entire settlement was not to be destroyed by the approaching flames. Consequently, several of the local citizens, including the employees of the plaintiff, immediately began to build backfires. They also used water and wet sacks to subdue the fire. After some two hours of fire fighting, it appeared that the grass fires had subsided and no fire in the vicinity of Shoffner was visible, except there is testimony that, some distance north of this particuar warehouse, certain ties were burning or smouldering when the fire fighters ended their labors. It is fair to assume from the evidence that the fires set by the defendants' employees caused these ties to become ignited. The wind during the day had been from the south, but there was testimony that it was variable. Employees of the warehouse inspected the premises some time between five or six, or thereabouts, and found no evidence of any fire or any apparent danger to the premises. After they had gone home, and at or about six or seven o'clock that

night, it was discovered that the warehouse was on fire, and the building and its contents were completely destroyed.

Defendants raise the question as to the applicability of Section 11147 of Pope's Digest to the present situation. However, a consideration of that statute requires an interpretation that, if the burning of this warehouse was the proximate result of the fire started by the employees under the circumstances, the railroad company would be liable regardless of any negligence. The statute is not confined to fires originating from locomotives, etc., but specifically pertains to fires caused by "any employee, agent or servant of such corporation, company or person upon or in the operation of such railroad." The Supreme Court of Arkansas has held that the burning of grass and weeds along the right of way is work which is fairly included in the operation of a railway, and that, in the performance of such work, a fire set by railway employees comes within the purview of the statute. Kansas City Southern Railway v. Cecil, 171 Ark. 34, 283 S.W. 1; Fort Smith, Subiaco & Rock Island Railway Company v. Humphrey, 184 Ark. 428, 42 S.W.2d 776; Clark v. St. Louis, Iron Mountain & Southern Railway Company, 132 Ark. 257, 201 S.W. 111. The only question of any importance is the sufficiency of the evidence to justify a finding that the fire set by the railroad employees was the proximate cause of the burning of the warehouse.

According to the testimony, there was no visible fire in the vicinity at the time the employees left the warehouse, except the burning ties. The testimony is somewhat indefinite as to the exact location of these ties. One witness stated that they were "a little north and west" of the warehouse. Another witness stated that they were probably "thirty to forty to fifty yards north of the warehouse." Defendants urge that there is insufficient evidence to warrant an inference that sparks flew from the burning ties and ignited the warehouse, and contend that, in absence of direct testimony, the cause of the fire becomes conjectural. Concededly, the evidence is entirely circumstantial as to the means by which the fire was communicated to the warehouse. The most plausible explanation is to ascribe the sparks coming from the burning ties as the cause. The wind was shifting and blew with gusts, and it is entirely probable that sparks from the ties were carried by the wind. Grass was growing alongside and underneath the warehouse. It appears that the building was a frame, box-like structure and was not tightly sealed. Sparks may have lodged between the crevices in the planks. In any event, it is a legitimate inference that the warehouse fire came from the fires that were burning in the vicinity during the afternoon in question. Kansas City Southern Railway v. Cecil, supra; Fort Smith, Subiaco & Rock Island Railway Company v. Humphrey, supra.

In St. Louis, Iron Mountain & Southern Railway Company v. Clements, 82 Ark. 3, 99 S.W. 1106, it appears that certain cross ties were left burning near a platform on which cotton was stored, and which was later destroyed by fire. There was no evidence on the part of any witness to the effect that sparks were seen flying from the ties to the cotton. The jury, however, returned a verdict for the plaintiff against the railroad company, and the railroad contended that the judgment should be reversed because there was no evidence that anyone saw the fire communicated from the cross ties to the cotton. In commenting upon this contention, the court said at page 7 of 82 Ark., 99 S.W. at page 1108: "As the evidence did not point to any other source of the fire, the jury were justified in concluding that it must have been communicated by sparks from these burning cross-ties or from embers left after the ties were burned. This conclusion, of course, rests on circumstantial evidence alone; and it cannot be said with absolute certainty that it is correct. It is possible, as counsel for defendant suggested, that the cotton was set on fire by some incendiary, or that the fire originated from spontaneous combustion, or from the carelessness of some unknown person. But these are mere speculations, outside of the evidence, and the jury had the right to reject them and base their verdict on what seems from the evidence to have been the most probable cause."

The only fires burning around the warehouse were grass fires commenced by defendants' employees or set by the townsmen as back fires to protect the village from being burned down. The use of back fires was reasonable and proper under the circumstances. To have refrained from using such means would have left the town to the mercy of the fires set by the section men. Under such circumstances, the original fires became the direct, efficient and

proximate cause of all the fire that burned in and around Shoffner, and if any such fire caused the burning of the warehouse, the predominant cause of the damage was the original fire. In other words, it was the negligence of the section men which set in motion that which was done by the local fire fighters. It is well recognized that whoever does a wrongful act is responsible for the consequence that may ensue in the ordinary and natural course of events. The rule is not changed even though the consequence is directly brought about by intervening causes, if it fairly appears that such causes are put in motion by the original perpetrator of the wrong. McKenna v. Baessler, 86 Iowa 197, 53 N.W. 103, 17 L.R.A. 310; Owen v. Cook, 9 N.D. 134, 81 N.W. 285, 47 L.R.A. 646; Aetna Insurance Company v. Boon, 95 U.S. 117, 24 L.Ed. 395; Nelson v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 30 Minn. 74, 77, 14 N.W. 360.

In McKenna v. Baessler, supra, the court considered a very similar situation. There, as here, the plaintiff set a back fire in order to protect his property from a prairie fire which the defendants negligently set. It was the back fire, however, that escaped from plaintiff's control without fault on his part and reached his property, which was totally destroyed. The court found that the predominant cause of the loss was the negligent act of the defendant in setting the prairie fire, and stated at page 200 of 86 Iowa, 53 N.W. at page 104, 17 L. R.A. 310: "In determining this case, it is a most important fact to be kept in mind that the plaintiff's property would surely have been destroyed by the fire set out by the defendants, if plaintiff had remained idle. He would have been a mere spectator, looking on at the destruction of his own property. It was not only his lawful right, but his duty, to use all reasonable and proper means to arrest the disaster. Every person is bound to use due diligence to save himself from injury by the negligent act of another. Little v. McGuire, 43 Iowa 447; Keirnan v. Heaton, 69 Iowa 136, 28 N.W. 478; Raridan v. Central Iowa R. Co., 69 Iowa 527, 29 N.W. 599. When the plaintiff kindled the back fire, and thereby sought to save his buildings, he was in the strict line of duty not only in attempting to save his property, but to save the defendants from an absolute liability for damages. It was his duty to fight the fire with fire or water, or in any way, so that his efforts in that direction were reasonable and proper."

■ It is not necessary, therefore, to determine whether the fire came from the ties or from sparks that may have come from the grass fires in the vicinity. The facts and circumstances warrant the conclusion that the fire did not originate from any other cause. There was no other place, according to the evidence, where the fire could have originated. It is not necessary that the evidence exclude all possibility of another source or origin of the fire. The views stated herein are expressly recognized by the Arkansas decisions. In Chicago, Rock Island & Pacific Railway Company v. National Fire Insurance Company, 151 Ark. 218, 220, 235 S.W. 1006, 1007, the court stated: "However, we think it was a question for the jury to determine whether, under the circumstances, even if the gin plant was being operated, the fire was communicated from that source or from a passing railroad engine. We have laid down the rule, and have adhered to it, that in the absence of direct and positive testimony as to the origin of a fire which consumes inflammable property situated near a railroad track soon after the passing of a locomotive, the inference might be drawn that the fire originated from sparks from the passing locomotive. Railway Co. v. Dodd, 59 Ark. 317, 27 S.W. 227. We have held that in order to be able to draw that inference it is not essential that the evidence should 'exclude all possibility of another origin of the fire or that the evidence be undisputed,' but it is sufficient 'if all the facts and circumstances in evidence fairly warrant the conclusion that the fire did not originate from some other cause.' St. L. I. M. & S. Ry. Co. v. Dawson, 77 Ark. 434 [92 S.W. 27]. In the present case no witness testified that they saw sparks escaping from the engine, but the circumstances are shown to be such that a spark could have escaped, and the jury were warranted in finding that, since the fire was discovered immediately after the passing of an engine, it originated from that source."

■ The court found that the fire was carelessly and negligently set, and that the defendants were liable for damages under the common law, as well as under the statute. We cannot say from the evidence that these findings of fact are clearly erroneous. The trial court further found

that neither plaintiff nor its employees were guilty of contributory negligence. Under the statute, only such negligence which amounts to a fraud is a defense. Kansas City Southern Railway v. Cecil, supra. The record falls far short of establishing such negligence, and we are not disposed to disturb the court's finding as to the absence of any contributory negligence.

It follows, therefore, that the judgment of the trial court must be affirmed, and it is so ordered.