### KANSAS CITY SOUTHERN RY. CO. v. NEW ENGLAND FIRE INS. CO.

### No. 12415.

Circuit Court of Appeals, Eighth Circuit.

March 3, 1943.

Joseph R. Brown, of Ft. Smith, Ark., for appellant.

Verne McMillen, of Little Rock, Ark. (Harvey L. Joyce, of Fayetteville, Ark., on the brief), for appellee.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The appellant railway company leased a tract of land adjacent to the right of way of its railroad in Gentry, Arkansas, to Johnson and Steele, the members of a partnership doing business as the Springdale Canning Company, for use by the lessees as a site for a canning factory, all buildings erected for that purpose by lessees to have the approval of the chief engineer of the railway company and to be maintained during the term of the lease to the satisfaction of the railway company. Section 24 of the lease provided: "The Lessee agrees to indemnify the Railway Company and save it harmless from any and all claims and expenses that may arise or may be made for death, injury, loss or damage resulting to the Railway Company's employees or property, or to other persons or their property, by reason or in consequence of the occupancy or use of said premises by the Lessee."

Concurrently with the execution of the lease, the parties to it entered into an industry track agreement, providing for the construction and operation of a sidetrack to serve the canning plant to be erected upon the leased premises. In this contract the lessees agreed to pay the railway company a fixed annual charge for maintenance of a part of the spur track and the cost of certain repairs and replacements. The railway company agreed to bear the expense of maintaining the rest of the sidetrack and to operate it. All maintenance work was to be done by employees of the railway company and the title of the track was to remain in the railway company, which reserved the right to use it for any general railway purpose.

The agreement contained the following provision: "It is understood that the movement of railroad locomotives involves some risk of fire, and the Industry assumes all responsibility for and agrees to indemnify the Railway Company against loss or damage to property of the Industry or to property upon its premises, arising from fire caused by locomotives operated by the Railway Company on said sidetrack, or in its vicinity for the purpose of serving said Industry, except to the premises of the Railway Company and to rolling stock belonging to the Railway Company, or to others, and to shipments in the course of transportation."

The track constructed under this agreement extended across the premises leased to the canning company, the right-of-way for the track being excluded from the premises leased. The consideration for the lease was the payment of a small annual rental and the agreement to give the railway company preference in routing shipments of the canning company's products. The consideration for the industrial track was the maintenance agreement, and the obligation of the canning company to give preference to the railway company in shipments and to operate its canning plant during the term of the industrial track contract.

The warehouse and canning plant erected by the canning company upon the leased premises were destroyed by fire. They were insured against such loss by the appellee, New England Fire Insurance Company, which paid to the canning company the amount of the loss covered by its policies, and joined with the partners in a suit against the railway company to recover for appellee the amount paid by it under its policies, and for the partners, the excess of the loss sustained over the amount of insurance paid. There was a judgment in favor of the appellee insurance company against the railway company, and in favor of the railway company against the individual plaintiffs.

The evidence shows that about one hour before the discovery of the fire in the canning plant, which at that time was not in operation but contained in its warehouse the products of the previous season's work, the railway company's section crew had been engaged in renewing the cross-ties in the sidetrack constructed to serve the canning plant, and in burning cross-ties along the railroad line in the vicinity of the canning plant. The foreman of the railway's section crew testified that while his crew was engaged in the work on the sidetrack, he burned the grass on part of the premises leased by the railway to the canning factory. Other members of the crew did not testify. The nearest point of the burned area was 49 feet from the northwest corner of the canning plant. The foreman stated that no cross-ties were burned nearer than 130 yards of the buildings. In his opinion it would have been im-

possible for sparks from any of the fires set out by the section crew to have ignited the canning plant. Witnesses for the plaintiff, on the other hand, testified that upon arrival at the fire, they found a pile of old cross-ties, removed from the side-track, burning near the canning plant buildings, that grass had been burned along the spur track adjacent to the buildings, that the ends of certain cross-ties in the spur track were on fire, and that the wind was blowing from the fires toward the canning plant. This testimony was contradicted by other witnesses for the railway company. The warehouse, canning factory, engine house, office building, and machinery of the canning factory were destroyed by fire and the stock of canned merchandise was damaged.

For reversal of the judgment against it, the railway company relies on Section 24 of the lease contract, contending that this section exempts the railway company from liability in the circumstances revealed by the proof in this case; and upon the contention that the evidence failed to show that the fire which destroyed the canning factory resulted from acts of appellant's employees in connection with the operation of appellant's railroad.

In preparing the record on appeal, appellant included only those paragraphs of the lease and industrial agreement which it thought material. Appellee printed and filed the complete contracts. We are asked by the appellant to strike appellee's supplemental record. These contracts came into the record on a motion of the appellant in the court below to make the complaint more definite and certain by setting out the instruments in question. They were introduced in evidence. The complete agreements cannot be said to be unnecessary to the presentation of the case. The motion to strike is without merit and is denied.

Railroad companies in Arkansas, by statute, are liable for all loss or damage resulting from fire caused by the operation of the railroad, or by acts of any of their employees engaged in the course of their employment. Pope's Digest of the Laws of Arkansas, § 11147. By the statute in question, liability is imposed upon the railroad company for damage resulting from fires so caused, without regard to the negligence of its servants or employees. The effect of the statute is to make railroad companies insurers against loss or damage by fire caused by the operation of their roads. St. Louis, Iron Mountain & Southern R. Co. v. Clements, 82 Ark. 3, 99 S.W. 1106; Clark v. St. Louis, Iron Mountain & Southern R. Co., 132 Ark. 257, 201 S.W. 111; Kansas City Southern R. Co. v. Cecil, 171 Ark. 34, 283 S.W. 1; Missouri Pacific R. Co. v. Barnes, 197 Ark. 199, 121 S.W.2d 896; Lowden et al. v. Shoffner Merc. Co., 8 Cir., 109 F.2d 956. Liability under the statute results where loss or damage is caused by a fire arising from any step in the operation of the railroad. The language of the statute is sufficiently broad to include such acts as "the burning off and clearing up of the right of way of the roadbed, or such acts as the building of fires on the right of way or in proximity thereto while engaged in the work of repairing the railway track or roadbed for the operation of trains." Kansas City Southern R. Co. v. Cecil, supra [171 Ark. 34, 283 S.W. 2].

The most that can be said of the evidence in this case from the standpoint of the appellant railway company is that it is in sharp conflict. It is true that there is no direct testimony showing that the fires set out by appellant railway company's section crew actually set fire to the canning company's warehouse. But it is equally true that the evidence does not point directly to any other source of the fire. On the record before us, we think the court was correct in submitting to the jury the question of the origin of the fire which caused the loss. As held by the Arkansas court in the cases cited above, and as said by this Court in Lowden et al. v. Shoffner Merc. Co., supra [109 F.2d 959]: "It is not necessary [to the liability of the appellant] that the evidence exclude all possibility of another source or origin of the fire." It is sufficient if from the evidence the inference that the loss was caused by fires set out by the railway's employees reasonably may be drawn. We conclude that the jury was justified in finding that the fire was caused by the sparks communicated from fires set out by the section crew of the appellant railway company while engaged in the operation of the railroad.

Nor do we think that the railway company was relieved from liability in this case by the provisions of the contract of lease executed by it and the owners of the canning factory. In support of this proposition the appellant relies chiefly upon the case of Cacey v. Virginian R. Co., 4 Cir., 85 F.2d 976. There the facts were as follows: Cacey and Hughes owned property

separated from the town of Matoaka, West Virginia, by the right-of-way of the railway, the tracks of which were located in a deep cut. In order to provide convenient access from the property in question to the town, steps had been built down the railway embankment on to the right-of-way on the side on which the property was located and up the embankment on the opposite side of the tracks. A minor using these steps to cross from the Cacey and Hughes property to the town was struck and seriously injured by a train. The railway company was compelled to respond in damages. It sued Cacey and Hughes to recover the amount of the judgment against it, relying on the provisions of a lease, which it had required Cacey and Hughes to execute, covering that part of the right-of-way occupied by the steps in question. In this lease Cacey and Hughes agreed to indemnify the railway company and save it harmless from any claims arising from injury or damage resulting to the railway company's property, or to other persons or their property, including the lessee, or the occupants of said premises, by reason of the occupancy or use of the said premises, or of the railway company's property adjacent thereto. Cacey and Hughes were held liable to the railway company under this indemnity agreement. There was a strong dissenting opinion by Judge Parker.

We think the present case distinguishable from the case under discussion on several grounds. As pointed out in the majority opinion in the Cacey case, the lease there involved was made for the sole purpose of protecting the railway company against the acquisition of rights in the use of its property through the operation of limitations. The consideration paid by the lessee was the sum of $1.00 per year. The lease was not made by the parties with the idea of any possible benefit from it to the railway company, but merely to protect that company from loss by reason of the use by lessee or others of the railway property. So far as anything to the contrary appears, the execution of the lease by the railway company was an act of grace, for which the lessee may, with reason, have been willing to hold the railway company harmless from all risks to which the use of the steps and the pathway across its tracks exposed it. Among those risks, an apparent, if not the greatest, one was the risk of injury to pedestrians by the operation of trains. The circumstances surrounding the execution of

the present lease are entirely different. As a result of them, the railway company secured the location of an industry upon its lines. The lessees not only paid an annual rental of $25, but agreed to build and maintain their factory to standards required by the railway company, and to give to the railway company the preference in shipments of products of the plant. We are justified in assuming under the evidence in the case that the railway company received, or expected to receive, a substantial benefit as lessor under the lease, for which it may well have been willing to accept the risk of loss to it by fires caused by the operation of its railroad. Certainly, if it was not, it should have contracted clearly against loss from that risk. We think it did not do so.

In the indemnity agreement here lessees agree to save the railway company harmless from all claims against the railway company that may arise for injury or damage resulting to the railway company's employees or property, or to other persons or their property, in consequence of the occupancy of the leased premises by the lessees. The loss or damage here was not to the property of the railway company or to that of any other person, but to the property of the lessees. If it was the intention of the railway company to protect itself from loss or damage to the property of lessees by reason of the operation of the railroad, we think it would have so provided; as, indeed, it did in the contract for the industry track executed concurrently with the lease. In that contract it was specified that the movements of railroad locomotives involved some risk of fire, and the owners of the plant clearly were required to assume the risk of loss or damage to its property arising from fires caused by locomotives operated by the railway company. It is to be noted, however, that even in this contract, which clearly expresses the release of the liability stated, the railway company did not exact from the canning company a release from loss caused by fires from any other operations of the railway company. Moreover, we think it cannot be said that the loss in this case was caused by the occupancy of the premises by the lessees. On the other hand, the loss was caused by the acts of appellant's employees engaged in the operation of the railroad.

The conclusion we have reached makes unnecessary a discussion of the other errors assigned by appellant. These assignments

of error in the court's charge to the jury are based either upon the contention of appellant that there was no substantial evidence to justify a finding by the jury that the destruction of the canning plant resulted from a fire caused by the operation of the railroad, or upon the contention that Section 24 of the lease relieved the railway of liability to the owners of the canning factory for damage caused by such fires. We have, however, carefully examined the court's charge and we conclude that it fairly submitted to the jury the questions of fact involved in this case.

The appellant also complains of the court's judgment against it for attorney's fees. Appellant's position here again is based upon its contention that appellee's cause of action was not under the statute, but was founded on negligence of appellant's employees. This contention is without merit and must be denied. Kansas City Southern R. Co. v. Cecil, supra.

The judgment of the district court is affirmed.